IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01432-CMA-MEH

MARCO A. ROCHA,

    Plaintiff,

v.

CCCF ADMINISTRATION,
CCCF WARDEN D. SMELSER,
CCCF PERSONNEL R. GARCIA,
C. ANDERSON,
B. BONNER,
J. MORA, and
J SANCHEZ,

    Defendants.

_____

**RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**
_____

Pending before the Court is Defendants' Motion to Dismiss [filed June 22, 2009; docket #4]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter was referred to this Court for recommendation on August 31, 2009 [docket #18]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court RECOMMENDS that Defendants' Motion to Dismiss be **granted**.[1]

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate

**BACKGROUND**

Plaintiff is a state prisoner currently incarcerated at the Sterling Correctional Facility in Sterling, Colorado. Plaintiff originally filed this lawsuit in Crowley County District Court on March 6, 2009 alleging four claims for relief against the Crowley County Correctional Facility and certain of its employees: (1) conspiracy to infringe plaintiff's rights, (2) violations of the First Amendment and Equal Protection Clause, (3) procedural due process violations, and (4) violations of the Eighth Amendment. (Docket #1-4.) Due to Plaintiff's allegations of violations of the U.S. Constitution, Defendants removed the action to this Court on June 19, 2009. (Docket #1.)

Plaintiff alleges the following facts, which are taken as true for purposes of this motion. On August 6, 2008, he was transferred from the Four Mile Correctional Center ("Four Mile") to Crowley County Correctional Facility ("CCCF"). Upon arrival, Defendants Garcia, Anderson, Mora and/or Sanchez ordered Plaintiff to sign a waiver of liability for receipt of Plaintiff's personal property. Plaintiff refused to sign, apparently concerned that some of his "current" property was mixed together with property that was the subject of a replevin action he had filed. Plaintiff expressed a concern regarding whether "to sign an inaccurate property inventory and to accept incomp[le]te items related to said replevin action." Upon Plaintiff's refusal, Defendants placed Plaintiff in segregation allegedly in "stripped" status (defined by the Plaintiff as a jumpsuit with no other warm clothing) and in an "extremely cold environment." While in segregation, Defendant Sanchez and CCCF Investigator Romero questioned Plaintiff about his refusal to sign; Plaintiff responded that he believed the subject property was under the Bent County court's jurisdiction due

---

Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

to the replevin action. Defendants allegedly refused Plaintiff's request to communicate with the Bent County District Court regarding the situation, then told the Plaintiff they would let him out of segregation if he signed the "property inventory."

The following evening, August 7, 2008, Plaintiff informed CCCF medical staff that he has a nervous disorder and was suffering sharp back pain due to exposure to extreme cold temperatures for more than 30 hours. Shortly thereafter, prison staff provided Plaintiff with bed linens and two blankets. Then, on August 13, 2008, Defendants Mora and Sanchez again demanded that Plaintiff sign the liability waiver/property inventory, but Plaintiff refused.

As required, the Court construes Plaintiff's *pro se* Complaint liberally as follows: Plaintiff's Claim One alleges a civil conspiracy and/or a violation of 42 U.S.C. § 1985 for conspiracy to infringe on Plaintiff's First and Eighth Amendment rights; Claim Two alleges violations of Plaintiff's First Amendment rights to be free from retaliation and to access the courts by Defendants' conduct in placing him in punitive segregation and depriving him of his personal and legal materials; Claim Three alleges a violation of the Due Process clause of the Fourteenth Amendment by Defendants' conduct in placing the Plaintiff in punitive segregation without "disciplinary process"; and Claim Four alleges a violation of the Eighth Amendment by Defendants' conduct in placing Plaintiff in punitive segregation and exposing Plaintiff to "potential risk of serious harm and terminal illness." Plaintiff seeks compensatory and punitive damages against Defendants, together with costs.

In response to Plaintiff's Amended Complaint, Defendants filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). As to Plaintiff's Claim One, Defendants argue Plaintiff fails to allege specific facts showing agreement and concerted action necessary to show a

conspiracy. Regarding Claim Two brought pursuant to the First Amendment, Defendants assert Plaintiff fails to state a retaliation claim by failing to connect his replevin action against Bent County Correctional Facility to the staff at CCCF, and fails to allege a denial of access claim by failing to allege that he was prevented from pursuing his replevin action. In addition, Defendants acknowledge Plaintiff notes an "Equal Protection" violation but states no facts showing how he has been treated differently than similarly situated inmates. Defendants allege Plaintiff's Claim Three does not describe a liberty right in being kept out of punitive segregation as required for a due process violation. Finally, Defendants argue Plaintiff's Claim Four does not describe the type of "cruel and unusual punishment" protected by the Eighth Amendment in being exposed to cold temperatures for a period of thirty hours.

Plaintiff responds that he has sufficiently stated his conspiracy, First Amendment and Eighth Amendment claims; however, he makes no argument regarding his Equal Protection claim (if any) and concedes that his due process claim may have been "improperly" stated.

## STANDARD OF REVIEW

**I.      Dismissal under Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Twombly* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal

conclusions, bare assertions, or merely conclusory. *Id*. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

**II.     Dismissal under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.

**III.     Dismissal of a Pro Se Plaintiff's Complaint**

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

**ANALYSIS**

Although not raised by the Defendants, the Court notes that Plaintiff has named in this lawsuit the CCCF Administration, a state entity, and the other Defendants in both their individual and official capacities as state employees. Although Defendants did not raise the issue of sovereign immunity, the Court may address any jurisdictional questions *sua sponte* to determine whether

subject-matter jurisdiction exists and will do so here. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Subsequently, the Court will address whether Plaintiff states plausible constitutional claims against Defendants.

### A.   Sovereign Immunity

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991); *see also Hunt v. Colo. Dep't of Corr.,* 271 F. App'x 778 (10th Cir. 2008) (CDOC is an agency of the State of Colorado that has not expressly waived its sovereign immunity from Section 1983 claims). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a

means for seeking money damages. *Buchwald v. University of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff seeks only monetary damages and asks for no prospective injunctive or declaratory relief. Consequently, the Court finds that any claims brought against the CCCF Administration and the Defendants in their official capacities are barred by the Eleventh Amendment. The Court recommends that Plaintiff's claims against CCCF Administration and the Defendants in their official capacities be dismissed.

B.  <u>Failure to State a Claim</u>

Here, for each claim alleged, the Court must examine whether the Plaintiff has stated on the facts alleged that the Defendants violated his constitutional or statutory rights.

1.  Civil Conspiracy or Conspiracy pursuant to 42 U.S.C. § 1985 (Claim One)

Plaintiff's Claim One, as stated, is unclear as to whether Plaintiff alleges a federal civil rights conspiracy claim pursuant to 42 U.S.C. § 1985 or a state law civil conspiracy claim. Therefore, construing his Complaint liberally, the Court will analyze whether Plaintiff states either claim.

To succeed with a § 1985(3) claim, the Plaintiff must show (1) the existence of a conspiracy (2) intended to deny him equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971)); *see also Ward v. St. Anthony Hosp.,* 476 F.2d 671, 676 (10th Cir. 1973). As the law has evolved, these elements have been clarified. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994). First, a valid claim must involve a conspiracy. Second, § 1985(3) does not "apply to all

tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* (citing *Griffin*, 403 U.S. at 101-02); *see also Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) ("[a] violation of section 1985 must include class-based or racially discriminatory animus"). The language of this requirement has been narrowly construed and does not reach conspiracies motivated by an economic or commercial bias. *Id.* (citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 837 (1983)). Third, § 1985(3) covers conspiracies aimed at interfering with rights that are protected against both private and official conduct. *Id.*

Here, the Plaintiff makes no allegations of race or class-based animus; therefore, to the extent that he seeks relief pursuant to 42 U.S.C. § 1985(3), Plaintiff's claim must fail.

In the alternative, Plaintiff appears to allege a state law claim for civil conspiracy. Assuming Judge Arguello determines to exercise supplemental jurisdiction to hear this claim, the Plaintiff must demonstrate the following: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). "The court will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff." *Id.* Also, the conspiracy's purpose must involve an unlawful act or unlawful means. *Id.*

In this case, Plaintiff alleges that Defendants conspired to coerce Plaintiff to abandon his replevin claim[2] against the Bent County facility by placing him in segregation upon his arrival at CCCF, exposing him to extremely cold temperatures and withholding his personal and legal

---

[2]The Court notes that Defendants have attached to their motion an order from the Bent County District Court regarding Plaintiff's replevin action; however, the Court has excluded this document from its analysis. *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

materials. To support his theory that Defendants worked together and with Four Mile and Bent County staff to place him in segregation, Plaintiff alleges that Defendant Mora, CCCF Correctional Officer, told him that he was expecting his arrival in the segregation unit and that Defendant Sanchez, CCCF Case Manager at the segregation unit, had received Plaintiff's file the day before he arrived. Construing the Complaint liberally and taking his allegations as true, the Court finds these allegations could, under the proper circumstances, be sufficient to show a meeting of the minds among certain of the named Defendants and as yet unnamed "Doe" defendants at the facility from which he was transferred (Four Mile).

However, as argued by the Defendants, Plaintiff must also demonstrate that the conspiracy's purpose involves an unlawful act or unlawful means. Thus, Plaintiff must show that Defendants' conduct has violated Plaintiff's constitutional rights. As set forth below, the Court finds that Plaintiff fails to state claims for First Amendment retaliation and denial of access to courts, as well as for Eighth Amendment cruel and unusual punishment. Therefore, the Court recommends that Defendants' motion to dismiss Claim One be granted and Plaintiff's conspiracy claim dismissed.

        2.        First Amendment Retaliation (Claim Two)

Plaintiff alleges that he suffered retaliation for his "attempts to litigate or exercise legal matters." Plaintiff describes Defendants' "adverse actions" as "depriv[ing] the plaintiff of his personal and legal materials, restricting his communication in general, but relevantly on access to the courts concerning meritorious civil actions and his postconviction motions." Docket #1-4 at 6.

Prison officials may not retaliate against an inmate because of the inmate's exercise of his or her right of access to the courts. *Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007) (unpublished) (citing *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir. 1990)). To withstand

dismissal of a retaliation claim, a plaintiff must plead specific facts showing retaliatory motive. *Id.* (citing *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998)). Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim. *Id.*

Here, the Court agrees with Defendants that Plaintiff fails to plead specific facts showing a retaliatory motive by CCCF employees for a lawsuit Plaintiff filed against the Bent County Correctional Facility (BCCF). In fact, Plaintiff fails to state whether and how the staff at the CCCF, and even at Four Mile from which he was transferred, knew about the case he filed against BCCF before they placed him in segregation for failing to abide by an order. *See Peterson*, 149 F.3d at 1144 (a plaintiff must prove that but for the retaliatory motive, the disciplinary action to which he refers would not have taken place). Moreover, Plaintiff complains that Defendants withheld his "personal and legal materials"; however, his allegations reflect that he would have received those materials if he had agreed to sign the property inventory as ordered. Consequently, the Court finds that Plaintiff has failed to state a plausible First Amendment retaliation claim.

        3.        First Amendment Access to Courts (Claim Two)

The Plaintiff alleges that, by placing him in segregation and withholding his personal and legal materials, Defendants denied him access to the courts. Defendants counter that Plaintiff fails to state an actual injury from Defendants' conduct and that they have not been provided fair notice of an access-to-courts claim against them.

Prisoners have a fundamental right to access the courts. *Lewis v. Casey,* 518 U.S. 343, 346 (1996). However, a prisoner making an access-to-the-courts claim is required to show that the

denial of access caused actual injury. *Id.* at 352-53. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.*

In *Christopher v. Harbury,* 536 U.S. 403, 415 (2002), the Court divided access-to-the courts claims into two categories. *Id.* at 413. The first, termed "forward looking claims," are cases where the alleged official conduct interferes with a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when plaintiffs allege that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1209 (brackets in original) (internal citations omitted). In this way, the official action is said to have " 'rendered hollow [the plaintiff's] right to seek redress' " in the courts. *Id.* (quoting *Christopher,* 536 U.S. at 415 (brackets in original) (internal citations omitted)). Here, Plaintiff alleges a "backward looking" claim.

With respect to backward looking claims, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. *Id.* Conclusory allegations are not sufficient in this regard. *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

Here, the Court agrees with Defendants that no "actual injury" is stated where Plaintiff claims in a conclusory fashion that punitive segregation and withholding of legal materials restricted his "access to courts concerning meritorious civil actions and his postconviction motions." Docket

#1-4 at 6. Plaintiff does not allege that the claim made in Bent County was lost and explains in no way how he was actually prevented from pursuing the Bent County lawsuit in a way that injured him. *See Wardell*, 470 F.3d at 959 (where plaintiff prisoner alleged in a conclusory fashion that his petition for writ of certiorari was dismissed, the plaintiff failed to state an actual injury necessary for an access to court claim). Plaintiff makes no claim of an actual injury and, thus, he has failed to state a plausible claim that punitive segregation and a lack of personal legal materials hindered his ability to pursue a "nonfrivolous" action as required under the First Amendment.

Therefore, the Court finds that Plaintiff has failed to state either a First Amendment retaliation claim or denial of access to courts claim. In addition, the Court agrees that Plaintiff has failed to allege any facts supporting a claim for a violation of the Equal Protection clause. *See Cosco v. Uphoff*, 195 F.3d 1221, 1222 n. 2 (10th Cir. 1999) (an equal protection claim is conclusory and entirely without merit where a plaintiff fails to allege he or she was treated differently than those similarly situated). The Court recommends that Defendant's motion to dismiss Claim Two be granted and the claims dismissed.

4.     Due Process under the Fourteenth Amendment (Claim Three)

Plaintiff alleges that Defendants placed him in punitive segregation without "disciplinary process." Defendants argue that Plaintiff fails to state a valid due process violation in that Plaintiff has no liberty interest in being kept in the prison's general population.[3] In response, Plaintiff concedes that he "may [have] improperly claimed defendant's violation to state policy and prison disciplinary procedure." Docket #17 at 4. At the same time, the Plaintiff states "if approved by the

---

[3]The Court agrees that the Plaintiff has no inherent constitutional right in not being placed in disciplinary confinement. *See Sandin v. Connor*, 515 U.S. 472, 487 (1995).

13

court, this claim may be amended." *Id.* However, as specifically set forth in this Court's August 17, 2009 order (issued two weeks before Plaintiff's response was filed), "the Plaintiff need not seek permission from the Court to file a first amended complaint in this matter, should he choose to do so before a responsive pleading is filed." The Plaintiff has not done so.

Therefore, because Plaintiff concedes that he has failed to state a due process violation in this case, the Court recommends that Defendants' motion to dismiss Claim Three be granted and the claim dismissed.

          5.      Eighth Amendment (Claim Four)

Plaintiff alleges that Defendants violated the Eighth Amendment by placing him in segregation and "exposing [him] to potential risk of serious physical harm and terminal illness." Although not clear in his Complaint, Plaintiff explains in his response that this claim refers to his allegation that he "was subjected to corporal punishment under extreme cold temperature." Docket #17 at 4. Defendants counter that Plaintiff fails to state sufficient facts to demonstrate cruel and unusual punishment.

In a Section 1983 claim, Plaintiff must allege an affirmative link between the Defendants' conduct and any constitutional violation in his Amended Complaint. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001) (citing *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)). In order for a prison official to be liable for "deliberate indifference" under Section 1983, "the official must have been personally and directly responsible for the occurrence of the alleged Eighth Amendment violation." *Jenkins v. Denver County Jail*, No. 99-1335, 2000 WL 84893, at *2 (10th Cir. 2000) (unpublished). "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution," because the theories of respondeat superior and vicarious liability are inapplicable to Section 1983 suits. *Iqbal*, 129 S. Ct. at 1948. Such allegations must plausibly state an entitlement to relief, and the Court must infer "more than the mere possibility of misconduct." *Id.* at 1950.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and . . . tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). To meet the subjective component, a plaintiff must demonstrate defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel

and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she [or he] consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (unpublished) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).

Here, the Court finds that Plaintiff has failed to state an Eighth Amendment violation in Claim Four. Although he alleges that the "extreme" cold temperature in segregation caused him significant back pain, Plaintiff admits that, after thirty hours' exposure to the cold and upon his complaint, prison staff provided him bed linens and two blankets. Plaintiff makes no further allegations regarding continued pain or illness; therefore, the harm he suffered from exposure was not sufficiently serious to implicate the cruel and unusual punishment clause of the Eighth Amendment. *See White v. Whetsel*, 17 F. App'x 839, 841 (10th Cir. 2001) (unpublished) (affirming dismissal of Eighth Amendment claim alleging air conditioner caused cells to be too cold and plaintiffs to fall ill). Because the risk of harm was not substantial in this case, the Plaintiff cannot show that Defendants' disregard of it (if any)[4] violated the Eighth Amendment.

The Court agrees with Defendant that Plaintiff has failed to state an Eighth Amendment violation; therefore, the Court recommends that Defendants' motion to dismiss Claim Four be granted and the claim dismissed.

## CONCLUSION

Accordingly, the Court RECOMMENDS that Defendants' Motion to Dismiss [filed June 22, 2009; docket #4] be **GRANTED**.

---

[4] The Plaintiff fails to allege that Defendants knew about his nervous disorder before they placed him in segregation.

Dated at Denver, Colorado, this 6th day of October, 2009.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge